May it please the Court, Maria Alenikos from Aiken-Gumstrasse-Hauernfeld on behalf of Plaintiff Toy Terrell Smith, and I would like to reserve two minutes for rebuttal. The attack on Plaintiff Smith by a known enemy, Rockmore, who had recently been transferred into Smith's facility and should have been immediately transferred out of that facility, constitutes deliberate indifference to Smith's safety and violated his Eighth Amendment rights. The Eighth Amendment requires all prison officials to take reasonable measures to guarantee a prisoner's safety, and specifically to protect a prisoner from violence at the hands of other prisoners. Here, the district court erred when it granted summary judgment in favor of Defendants Cruse and Melton, based on declarations they submitted that they were not involved in Rockmore's transfer from one facility into Smith's facility, and that they didn't know that one of Smith's enemies had been transferred to his facility. It erred in two ways. If that were true, would the result be correct? I know you don't concede that there's the absence of a factual issue, but if that were true, would the result be correct? No, it would not be correct, because Even if they had no knowledge of the relevant facts? Having, if they had, if they had no knowledge that his enemy was there, and they had no part in sending him there, would the result be correct? If there was undisputed evidence that they did their job, reviewed the four, and they It's a yes-or-no question. If they had no knowledge of the enemy being there, and they did not participate in sending him there, would the result be correct? If there was no constructive or actual knowledge, then I believe that it might be, the decision could be correct. That's about the most equivocal answer I've heard in a while. And the reason I think you can safely answer yes, because that's not your argument. Right. Your argument is that he has contrary evidence, and that's actually what I wanted to get to next. This was sort of prefatory, so I know you're And what's there in response is his own affidavit, right? Is there anything else other than his own statements in the, that contradicts their assertions in this regard? His own statements in his verified complaint are the only ones. Right. And that's what I wanted to focus on, because they are very conclusory in nature. And the general rule on summary judgment is that once there have been facts placed in evidence, that kind of generic statements are really not enough without some supporting facts to contradict it. And I wonder if there's anything here that's more than generic that would be an actual sort of underlying fact to call into question the accuracy of these statements. I'm not sure if there's anything here that's more than generic that would be an actual underlying fact to call into question the accuracy of these affidavits. Sure. For example, you know, I overheard so-and-so say to this person that my enemy was there, or something, to support the assertion of, no, they're wrong. There were facts that were put, unfortunately, in the opposition to the motion for summary judgment, but not directly in the declaration. So there's nothing specific that is sworn? Other than the general statement that they processed in evidence, correct. And so what is in the opposition? I understand that if we're to apply the normal rules, if it just shows up in what amounts to a brief, it's not evidence. But he was pro se, and that may lead me into a question about whether or not he should have been granted counsel at the trial, but at the trial court. But what is it that you're referring to in his opposition papers? In his opposition papers, he has statements that the Cruz and Melton actually sat on that committee. He contradicts their assertion that they were limited to a particular facility and would not have been involved at all in dealing with the processing of Rockmore when he entered the facility. Yeah. Was there a motion made in the district court for appointment of counsel? There was. And she denied that? Correct. Didn't he refer in his opposition that there was outstanding discovery where he had asked for information as to who sat on the committees, the two committees? Yes, that's right. From A and B? He did, and they did not provide him that information. Had discovery been cut off at that point, the time the motions for summary judgment had been filed? I don't believe that discovery had been cut off, but he did not file a motion to compel. He thought he was stuck with their answers. Was he ever given the warning that's required at pro se, to give to pro se Petitioners about their need to file? It does not appear in the record that he was provided with that warning. That's with respect to the two officers who may or may not, I mean, I guess that's the disputed question, know anything about the transfer of the enemy. What do we do with the — with Navarro, who says he found the knife under him? I mean, that's a hard one to do, because in some sense that's been adjudicated as to whether or not Navarro has been telling him, was telling the truth. And within the administrative system of the court — of the prison, Navarro has been believed. So are we stuck with that? I mean, what do we do with Navarro and the — his complaint that Navarro just planted the, you know, he dropped it, found it himself, and he had nothing to do with it? What do we do with it? Sir, so his allegation is that Navarro fabricated the weapon charge to begin with and therefore set him up for what was going to be a sham hearing on the issue, and then presented false testimony, which was the only testimony — which was the only evidence that was presented at that hearing that supported the conviction. And if then the result of that disciplinary hearing were the end of the matter, there would never be an opportunity to review a situation such as this one where the — there's an allegation that the whole charge was fabricated and was part of this plot to essentially retaliate against the prisoner for filing other grievances and complaints within the prison system. And so I think that the district court was required in this particular circumstance to make some credibility assessment of Navarro's testimony. And how should she have done that? I mean, does she have to have a trial on that? I believe that there should — yes, there should have been the opportunity to allow Smith to present his evidence and then Navarro to present his evidence and for — to go to a jury to determine whether — And is it a violation of 1983 to present false evidence? I believe it is a — it is a violation, yes, of his due process to present false testimony at a disciplinary hearing. And would there be qualified immunity for presenting false evidence? And do we have case law on that point? The reason I'm asking all these questions is I'm kind of falling into a black hole, because I've never seen a case with quite this posture. Well, qualified immunity is not available if what the officer does is unlawful. And — Well, no, that's wrong. I mean, that's what qualified immunity is all about, is that you can do things that are unlawful but nonetheless have qualified immunity if it's not clear to you at the time of your action as a reasonable person that it's unlawful. Correct. And so I don't think there are any circumstances under which a prison official could say that it was reasonable for them to believe that giving false testimony at a disciplinary hearing would be lawful. Does that mean, then, that we're going to have a 1983 claim every time we've got a dispute as to whether or not the prison official was lying? No. I think that there are circumstances where maybe there is — there's other evidence. I mean, here we have a unique case where there's many people on the scene, including another officer who rolls over Mr. Smith, and he doesn't see a weapon. No one else sees a weapon. Yeah, they are. Well, but not seeing it is not evidence that it wasn't there. That's the absence — that's the absence of any evidence. It doesn't contradict anything. Right. And their statements — I mean, these guys may all be playing cover-up for each other, I understand that. But their statements are, well, I wasn't focused on that. They didn't say I was looking and I didn't see it. They said, no, I wasn't focused. That's true. Counsel, you've just about used up your time, but we've used a lot of it with questions, so you may have a minute for rebuttal when the time comes. Thank you. Good morning, Your Honor. May it please the Court. Susan Coleman from Burke Williams Sorensen on behalf of Appellees Cruz, Melton, and Navarro. Appellant's counsel noted that the attack on Roquemore is tantamount to deliberate indifference to his — to Smith's safety, the attack by Roquemore, which was actually, as he admitted in his deposition, a mutual combat situation. The problem is that here, Smith did not sue the people who moved Roquemore to his yard. So the only thing — He didn't know. They didn't know. They weren't — He alleged no defendants, does one through four, as members of the committee. I don't know which committee he was referring to, but one through four were the members of the committee. And he tried to get their information through discovery. Well, what he had asked for in discovery, Your Honor, was the chrono moving Roquemore from yard A to yard B. That chrono was not located. The discovery was responded to, and it was told to him that that chrono was not in inmate Roquemore's file. And there's some indication of that. Did he ask for the names, though, of who were on the committee? Well, the committee changes. It can change from day to day. You know, you have an acting facility captain, you have correctional counselors, who's ever available. So it's not a standing committee. But the short answer is, no, I don't believe he asked for the names of who would have been on that committee. So the discovery response was the chronos, or the document, who was on the committee that moved Roque for whatever his name is. Roquemore, right. Roquemore. Lost and found? There wasn't a chrono moving Roquemore from A to B. So what we think happened is there was a 154-form bed move that a lieutenant or a sergeant, a bus comes in, that they need extra space in the cells. And so they start moving people on short notice. And they just move people without a committee decision, which is allowed. They're both general population facilities. They just move the guys. So it's not a matter of lost. You're saying that the likelihood is there was never a chrono and never a committee. Right. Moving Roquemore from A to B. But at any point And how do we know that? Is there evidence on the record to support what you just said? Well, every time they do a move by a committee, there's a committee chrono. Some of those are in the record. So how do you know that there is one every time? Or if there was a chrono, why isn't this one here? One of the things that bothers me about this case is that there seems to be a fair amount of evidence that's missing. So why don't we have a video of this yard? Or why, with respect to the video taken from the other yard, does it cut off just before he's rolled over? I mean, that one sounds like 18 minutes in the Nixon tapes. I mean, this just doesn't smell very good to me. There were videos. They found three out of four views. I don't know if the video that he was complaining about just wasn't pointing at where the incident occurred, or I don't believe that there was any conspiracy here. Well, what's the basis for your belief? His rules violation report was reheard and reissued three different times. No, I got that. No, what I'm really after, and maybe it was a little facetious of me to say that, what we have is the record. And what you or I might believe is not independent of the record. It's in the record. It either is or isn't. Right. But there's no evidence in the record that there was some conspiracy to hide evidence. I mean, what we have is some video that was bad quality. We have photos of the knife that was found. We have the officer's report, which was signed off by his supervisor. So we have some evidence, which is all that's required in order to find him guilty of a rules violation. And if every time an inmate alleged fabrication by a correctional officer, that that was enough to overturn a rules violation or to create a section 1983 cause of action, there would be a lot of those occurring. There was some evidence that he was guilty, and he lost no credit in any event from that event. So, you know, he got all the process that he was due in that proceeding. With regard to, Your Honor asked a question earlier about the does, there was no substitution in of the people that would have been responsible for moving Roquemore to the yard where Smith was. He never learned who they were. How could he substitute anybody in? Well, typically people sue the warden or someone that's high enough up to have some responsibility. But here he sued two people who were on the receiving yard and not the yard that moved inmate Roquemore. So clearly they had no responsibility. But the only evidence the court has is their declaration. They were not involved with the move. They were not aware of the enemy's situation. Appellant points to his verified complaint where he makes a conclusion or a conclusory allegation that these people must have, because they were on yard B, sat on the receiving committee for Roquemore. Clearly, Appellant Smith was not at any committee involving Roquemore. He didn't have percipient personal knowledge. He's a suitor. But wasn't there, as I understand it, there should have been a committee, a receiving committee for unit B. Is that right? That's not really accurate that there's a receiving committee. I mean, these are both general population facilities. People can get moved for facilities. Without committees. Yes, without committees. Just they get moved. Happens all the time. Is there any evidence to contradict that these two individual officers did not know of the enmity between Smith and Roquemore? There's no contrary evidence. The only thing we have is his allegation in the complaint that he says they sat on a receiving committee, which he would have no foundation to know about. And they said they didn't. That was not addressed in the MSJ below. Appellant's counsel, once they were appointed, pulled it out of the verified complaint to try to create a dispute of material fact as to what was known. So that was not specifically addressed in the summary judgment. What you have in the declarations of Cruz and Melton is they weren't involved in the move. They weren't aware that he was on the yard. If they had known there was an enemy on the yard, they would have taken action. They didn't specifically address whether they were on a receiving committee or not. At some point, and I can't remember whether it's in the papers that he filed that would be sort of comparable to briefs or whether it's in his statement, I can't remember, but at some point Smith says that Navarro, in the past, has been involved in staging fights in the California prison system. And, of course, we know, quite independent of Navarro, that there was a period during which this was just – it was scandalous, that is to say, setting up fights and even then shooting at the prisoners once the fights began. Do we know anything beyond a bare statement by Smith that Navarro wasn't involved in any way in this? There was no discovery that developed that allegation, so we have nothing beyond his conclusory allegation. And I will say in response to the Court's statement about the scandalous actions that the Corcoran Eight were acquitted in the criminal – in the criminal trial, so – But, of course, criminal is different from civil. I mean – Right. Most of those civil cases that were related were settled. So no admission of liability there. Now, as long as we're getting an idea of how much they were settled for? I was – I was involved in some of those. Yeah, so how much? Some were pretty significant. No, I shouldn't say – unless it's confidential. No, the Department of Corrections settlements can't be confidential, but Tate was about $850,000. I was involved in another one that was $600,000. Yeah, so there's something there. Substantial. Yeah. Okay. But with respect to this case, we don't know anything about Navarro's involvement except the bare statement by Smith, which may or may not be true. Right. Yeah. And I believe there's a statement in his transcript, which is attached to the summary judgment, saying that he had no interaction with Navarro previously. So if the – if he is making such allegations, it would be based on hearsay. It wasn't something that was developed in the record below. Yeah. Something that bothers me about this case is that given the nature of the case and the circumstantial evidence that Smith has, at this point, to rely on, given the nature of his opponents, given the complexity or difficulty in compelling discovery, I'm inclined to think that maybe the district judge made a mistake in denying counsel. On the current state of the record, Smith doesn't have much of a case, but that may – it may be because he didn't have a lawyer. Well, it may or may not be. The court – the standard to review appointment of counsel is abuse of discretion. Yeah. I understand that. And while undoubtedly he would have had better representation with counsel and maybe done a more thorough job of discovery, that's not the standard for appointing counsel. Well, he just – they could have just asked the district court judge to delay ruling on the summary judgment motion until the discovery had been completed. It was completed at the time of summary judgment. He says in his opposition that discovery was outstanding, but by the time she ruled No, but his allegation is that we did not respond to discovery about who had moved those – who had moved Rockmore from yard A to yard B. We did respond to that discovery and said there was no Crono in his file, so we thought it happened with the 154B. Those are not retained. So it was responded to. He just didn't get the answer he wanted. He got the answer, but it wasn't helpful to him. He does make reference to a second set of interrogatories. Is that what you're talking about, that were outstanding? There was no discovery that was not responded to. Okay. All right. But, I mean, he certainly could have asked for an extension, a Rule 54. 56D. 56 to do additional discovery if necessary. We're not really disputing that there was some sort of an error in placing Rockmore on the yard with Smith. Unfortunately, they got into a fight which was pretty much a mutual combat situation. They punched each other. There were really insignificant injuries. He says, you know, pepper spray was used. He had no injuries really to speak of. But it wasn't Smith, it wasn't Cruz and Melton who put him there. And that's who's being sued here. And under 1983, there has to be some individual connection, some individual liability. So while the Court may want to remedy things for Mr. Smith and provide him some relief because clearly someone maybe made a mistake. He didn't sue the right people, and this is not the time, you know, these people, both on the merits and in terms of qualified immunity, the summary judgment motion should be upheld. Thank you, counsel. Thank you. Ms. Alanikos, you have a minute. Thank you, Your Honor. I just want to address the point that just because they were not involved in moving Rockmore from one facility into Smith's facility, that that absolves them of responsibility, because it doesn't. The regulations provide that there must be a committee to classify every inmate that arrives at a facility. And the whole purpose of this regulatory framework is to prevent what happened here, to prevent attacks on inmates. Now, tellingly, we don't have any evidence that they didn't sit on the receiving committee. The receiving committee is supposed to look through the file because the regulations require that every inmate have a central file. In that file, there must be a form that documents any enemies for the inmate that's being transferred in. That's the safety form that is meant to protect prisoners from attacks. The regulations also require that when the committee receives the inmate, they have to sit down, go through the file, and determine what is appropriate placement within that facility, or if there's been an inappropriate placement. And if there's been an inappropriate placement, which would include a situation where your enemy resides in the facility, they have to recommend transfer out. And that clearly didn't happen here and should have happened here. Thank you, counsel. The case just argued is submitted. We thank both counsel, and we will take it up. Oh, yes. And I also want to thank Pro Bono counsel for your willingness to take on this case. It's extremely helpful to the Court to have lawyers who are willing to undertake these efforts on behalf of folks who can't represent, who aren't represented otherwise. So thank you especially for doing that. We're going to take about a five-minute break. Thank you.
judges: Graber, Fletcher, Paez